UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| FIRST NON-PROFIT INSURANCE COMPANY, )<br>233 N. Michigan Ave., #1000 )<br>Chicago, IL 60601 )<br>                                      )<br>For itself and on behalf of          )<br>                                      )<br>PAUL PUBLIC                           )<br>CHARTER SCHOOL,                       )<br>5800 8th Street N.W.                  )<br>Washington, DC 20011                  )<br>                                      )<br>            Plaintiffs,               )<br>                                      )<br>v.                                    )   Civil Action No. 1:17-cv-2008<br>                                      )<br>ALLIED WORLD SURPLUS LINES           )<br>INSURANCE COMPANY,                    )<br>1690 NEW BRITAIN AVE., SUITE 101     )<br>FARMINGTON CT, 06032                  )<br>                                      )<br>            Defendant.                ) | |

---

**FIRST NONPROFIT INSURANCE COMPANY'S
COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

NOW COMES Plaintiff, First Nonprofit Insurance Company ("First Nonprofit"), for itself and on behalf of Paul Public Charter School, by and through undersigned counsel, Lee & McShane, P.C., and for their Complaint for Declaratory Judgment and Other Relief, states as follows:

**PARTIES**

1.      First Nonprofit is an insurance company incorporated in Florida with its principal place of business in Chicago, Illinois.

2.      Paul Public Charter School (PPCS) is a corporation organized under the laws of Washington, DC with its principal place of business in the District of Columbia.

1

3. Defendant Allied World Surplus Lines Insurance Company ("Allied World") is a corporation organized under the laws of Arkansas with its principal place of business in New York.

## JURISDICTION

4. This Court has personal jurisdiction over Defendant because Allied World has established the requisite systematic and continuous contacts with the District of Columbia so as to justify the exercise general personal jurisdiction over Defendant by courts sitting within the District of Columbia. In the alternative, this Court has specific personal jurisdiction over Defendant because Allied World entered into an insurance contract insuring a risk principally located within the District of Columbia as described in full in this Complaint.

5. This is an action for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure to determine a real and justiciable controversy among the parties with respect to their rights and obligations, if any, under two insurance contracts as regards a defendant in two underlying actions, as more fully described below. Further, this action seeks an award of compensatory damages and all such further relief that this court deems proper and just.

6. Paul Public Charter School is insured under a contract of insurance with Allied World Surplus Lines and insured under a separate contract of insurance with First Nonprofit. As such, it has an interest in this litigation and disposing of the action without its participation may impair its rights under one or more of its contracts of insurance.

7. An actual controversy exists between the Plaintiffs and Allied World Surplus Lines Insurance Company and, therefore, this Court is authorized to grant the Declaratory Judgment sought herein pursuant to 28 U.S.C. §2201.

8. This Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. §1332 because the matter in controversy exceeds the sums or value of $75,000 and the citizenship of the parties is diverse.

## **THE UNDERLYING ACTIONS**

9. On or about October 5, 2016, Justin Route, Jennifer Route and Vaughn Jones filed a Complaint in the Superior Court of the District of Columbia against Paul Public Charter School ("PPCS") and Jami Dunham.  On or about October 6, 2016, Justin Route, Jennifer Route and Vaughn Jones filed an Amended Complaint (hereinafter the "Route Amended Complaint") A copy of the Route Amended Complaint, Case No. 2016 CA 007379 B, is attached as Exhibit 1.

10. In the Route Amended Complaint, the Plaintiffs allege, in relevant part, as follows:

   a. Jones was employed by PPCS from 2011 through 2013.  In 2012, Jones was appointed to serve as Interim Director of Student Services and defendant Dunham became his direct supervisor.

   b. Jones allegedly began an affair with Dunham in the fall of 2012 and engaged in sexual relationships allegedly 2 to 3 times per month for several months.

   c. The affair ended in early January 2013, when allegedly Dunham's husband overheard of phone conversation between Jones and Dunham.

   d. Shortly thereafter, Ms. Rosemarie Ragin became Jones' new supervisor. Allegedly, Ragin ignored Jones' request for career opportunities, and among other additional incidents, advised Jones that all members of the administration would have to re-interview for their current positions.

   e. After the interview, Ragin and Dunham met with Jones informed him that his employment would be terminated at the end of the year.

f.  While he was employed at PPCS, Jones was also the head basketball coach at Coolidge High School. He continued in this position after he left employment with PPCS.

g.  In May 2014, Jones allegedly supported a former PPCS employee, Ms. Witherspoon, in her wrongful termination lawsuit against PPCS. Jones provided a sworn statement in support of Ms. Witherspoon's lawsuit in May 2015.

h.  Allegedly, Dunham decided to retaliate against Jones for his support of Ms. Witherspoon.

i.  At that time, Justin Route was a star basketball player for Jones at Coolidge High School.

j.  Previously, Justin Route had attended PPCS from 2009 through 2012. The Route Amended Complaint alleges that Justin Route repeated the eighth grade in the 2011-2012 school year.

k.  In 2015, Jones was advised that he was being investigated for knowingly playing Justin Route as a fifth-year senior. As a dispute had arisen as to whether Justin Route had repeated eighth grade or had entered ninth grade in 2011-2012 while attending PPCS.

l.  Allegedly, Dunham provided a "false transcript" showing that Justin Route had attended the ninth grade at PPCS in the 2011-2012 school year. Dunham allegedly told investigators that Jones knew or should have known that Justin Route repeated the ninth grade, and was not eligible to play basketball in the 2015-2016 school year.

    m. Allegedly, confronted with a conflicting transcript, Dunham told the investigators that the transcript provided by Justin Route's mother was false and was created by Ms. Denise Brijbasi.

    n. Allegedly, Coach Jones and others pressured a Coolidge High School Counselor, Genevieve Maignan, into changing Route's school records to reflect he was still eligible to play basketball in 2015-2016.

    o. Allegedly, as a result of Dunham's false testimony and false documentation, Jones was barred from serving as a coach with any DCPS school.

    p. Further, Dunham's actions allegedly hurt Route in that he was banned from playing basketball, lost approximately one dozen scholarship opportunities, could not play basketball in private schools because the false transcripts followed him around, was denied the opportunity to graduate in 2016 and, because he lost any scholarship opportunities, cannot attend college.

    q. The above referenced facts are alleged to support 10 cause of action; five causes of action by Jones and five brought by Justin and Jennifer Route.

11. In addition to the Route Amended Complaint, PPCS was also sued by a Ms. Genevieve Maignan in a complaint filed on or about October 19, 2016 against, among others, the Board of Trustees of PPCS ("Maignan Complaint.")  The Maignan Complaint was filed in the Superior Court for the District of Columbia and was assigned Civil Action No. 2016 CA 007656 B.  A copy of the Maignan Complaint is attached as Exhibit 2.

12. In the Maignan Complaint, the Plaintiff alleges, in relevant part, as follows:

a. Maignan alleges that she was employed as a counselor at Coolidge High School, the same school where Jones was the basketball coach and Justin Route was on the basketball team.

b. Maignan alleges that during the 2013-2014 school year, she spoke to "J. R." Regarding his class schedule, and she advised that Student that he did not have the required credits to graduate in the spring of 2015 as expected. The Student advised her that he was not expected to graduate until the spring of 2016 because he had repeated the eighth grade at PPCS and entered the ninth grade at Coolidge High School in the 2012-2013 school year.

c. Maignan conferred with Jones regarding the Student and advised Jones that she would need an official transcript from PPCS before she could make any corrections to the Coolidge High School transcript.

d. Maignan alleges that in collusion with the Student and the Student's mother, Jones and a PPCS administrator created, signed and issued a fraudulent transcript reflecting that the Student completed the 2011-2012 school year as an eighth grader. Jones intended to use the fraudulent transcript to induce Maignan to alter the Coolidge High School transcript, so the Student would have an additional year of eligibility for the basketball team.

e. Maignan alleges that she was unaware that the transcript was fraudulent and that after reviewing the fraudulent transcript, she changed the Coolidge High School transcript granting the Student an extra year of eligibility for the basketball team.

    f. In September 2015, Maignan was interviewed by DCPS Office of Compliance Investigations who was investigating the change of the Student's transcript and Coach Jones' involvement in the determination of the Student's graduation date.

    g. In November 2015, Maignan learned that she was being investigated for the falsifying the Student's Coolidge High School transcript. Maignan alleges that Jones publicly advised the parents, students and investigators that Maignan had falsified the records and that she was a snitch in order to defame her.

    h. On January 13, 2016, Maignan received a notice of infraction and a one-day suspension.

    i. Maignan's complaint alleges that the above facts give rise to seven cause of action, including three against PPCS. The three causes of action against PPCS are for civil conspiracy, negligent supervision, and negligence.

## ALLIED WORLD SURPLUS LINES POLICY

13. Allied World Surplus Lines Insurance Company issued an Educators Errors and Omissions and Employment Practices Liability Insurance Policy number 0202-0628 for the policy period of June 30, 2016 to June 30, 2017 (Allied World Policy.") The Allied World Policy has a $5,000,000 limit of liability. A copy of the Allied World Policy is attached as Exhibit 3.

14. By letter dated December 1, 2016, Allied World informed PPCS that the Route Amended Complaint constituted a **Claim** against the **Insured** for **Educators Wrongful Acts** first made on or about October 31, 2016. A copy of Allied World's letter is attached as Exhibit 4.

15. By letter dated December 1, 2016, Allied World informed PPCS that the Maignan Complaint constituted a **Claim** against the **Insured** for **Educators Wrongful Acts** first made on or about October 31, 2016.  A copy of Allied World's letter is attached as Exhibit 5.

16. Both letters acknowledge that Insuring Agreements (A) and (B) of the Allied World Policy require Allied World to defend any **Claim** first made against the **Insured** for a **Wrongful Act** that is covered by the Policy.

17. Both letters further state that Condition (C) of the Allied World's Policy was implicated and therefore eliminated Allied World's duty to defend.

18. In subsequent letters dated December 27, 2016, Allied World advised PPCS that under Conditions (C), its Policy was excess of First Nonprofit's policy and that under paragraph (2) of Conditions (C) Allied World had no duty to defend.  A copy of these letters is attached as Exhibit 6.

19. Condition (C) of Allied World's Policy states as follows:

(1) All **Loss** payable under this Policy will be specifically excess of and will not contribute with other valid insurance (whether collectible or not), including but not limited to any other insurance under which there is a duty to defend, unless such other insurance is specifically stated to be in excess of this Policy.  This Policy will not be subject to the terms of any other insurance.  Other insurance includes, but is not limited to, coverage or benefits provided by self-insurance arrangements, pools, self-insurance trusts, captive insurance companies, retention groups, reciprocal exchanges or any other plan or agreement of risk transfer or assumption.

(2) Notwithstanding Conditions (C)(1) above, with respect to any **Claim** under this Policy for which coverage is available under any insurance policy which applies to claims for bodily injury and/or property damage, the **Insurer** will have no duty to defend such **Claim**, or to pay **Defense Expenses** incurred by or on behalf of any **Insured** in connection with such **Claim** or to contribute to any defense provided to any **Insured** under such other insurance policy, or to reimburse any other insurer, in whole or in part, for **Defense Expenses** incurred in connection with such **Claim**.

## THE FIRST NONPROFIT INSURANCE POLICY

20. First Nonprofit issued a of Multiple Peril Policy to "Paul Public Charter School" bearing policy number NPP 1000655-02 with effective dates of June 30, 2015 to June 30, 2016, ("the First Nonprofit Policy"). A copy of the First Nonprofit Policy is attached as Exhibit 7.

21. The First Nonprofit Policy contains the following General Condition:

### I.   OTHER INSURANCE

This insurance is primary with respect to any other insurance available to the **insured** if such other insurance was purchased by and issued to the **insured** specifically to apply in excess hereof. Otherwise, this insurance shall apply in excess of all other insurance available to the **insured**. Without waiving the foregoing, if any insurer affording other insurance to the **insured** denies primary coverage under its policy, we will respond under this policy as though such other insurance were not available, provided that we shall be subrogated to all rights of the **insured** to such other insurance and the **insured** shall do all things necessary to enforce such rights.

22. Section H. of the First Nonprofit Policy is entitled "Terms & Conditions – Primary Liability Coverages."

23. Section H., in its pertinent part, contains the following terms and conditions:

### A.   COMMON EXCLUSIONS

Except as expressly provided in a specific Section, insurance provided under all Primary Liability coverages provided by this policy does not apply to:

11. **Professional Services**

   Any **damages** arising out of the rendering or failure to render professional services, including, but not limited to healthcare and veterinary services, **social work, foster care services**, psychological counseling, psychological therapy, psychological evaluation for program placement, legal, accounting, financial, appraisal, architectural, cosmetic, physical therapy, massage, optical, optometric, ear piercing and engineering services.

**D.    COMMON DEFINITIONS**

Except as expressly provided in a specific Section, the following Definitions apply to all Primary Liability Sections.

1. **Accident** includes continuous or repeated exposure to the same conditions resulting in **bodily injury** or **property damage**.

…

4. **Bodily injury** means **bodily injury**, sickness or disease sustained by a person, including death resulting from any of these at any time.

…

28. **Social work** means activities of the Named **Insured** involving child welfare, community physical and mental health, adoption services, personal counseling services, and recreational activities.

29. **Social work injury** means acts, errors or omissions of the **insured**, arising out of the rendering or failure to render **social work** and **foster care services**. Acts, errors or omissions include but are not limited to the following allegations: duress, negligence, threats of removal of a child/children, and threats of administrative or criminal action.

30. **Social work occurrence** means continuous or repeated exposure to substantially the same harmful conditions resulting in **social work injury**, including all related **social work** and **foster care services**. All such exposure occurring over any period of time shall be considered to have occurred in the Policy Year of the first such exposure.

24.    Section I. of the First Nonprofit Policy is entitled "Bodily Injury and Property Damage Liability." The Coverage Agreement for Section I. provides:

> We will pay those sums that the **insured** becomes legally obligated to pay as **damages** because of **bodily injury** or **property damage** to which this insurance applies. The **bodily injury** or **property damage** must occur during the term of coverage and must be caused by an **occurrence** that takes place in the Coverage Territory.

25.    Section K. the First Nonprofit Policy is entitled "Social Work, Foster Care and Counseling Liability."

10

26. Section K. is amended by the Teachers Liability Endorsement which provides:

### TEACHER'S LIABILITY

This endorsement modifies insurance provided under **Social Work, Foster Care and Counseling Liability (Section K.)** of this policy:

Paragraph A. Coverage Agreements is amended by the addition of the following:

We will pay those sums that the **insured** becomes legally obligated to pay as damages arising out of teaching activities of the **insured**. Teaching Activities means acts or omissions in connection with the provision of educational or instructional services to pupils or students of the named insured actually occurring during the Term of Coverage.

### COUNT I – DECLARATORY JUDGMENT
### THE FIRST NONPROFIT POLICY DOES NOT PROVIDE BODILY INJURY OR PROPERTY DAMAGE COVERAGE FOR THE COMPLAINTS AGAINST PAUL PUBLIC CHARTER SCHOOL

27. PPCS and First Nonprofit repeat and re-allege paragraphs 1 through 26 as though fully set forth herein.

28. Section I. of the First Nonprofit Policy applies only to **damages** because of **bodily injury** or **property damage**.

29. The Route Amended Complaint does not seek **damages** because of **bodily injury** or **property damage**.

30. The Maignan Complaint does not seek **damages** because of **bodily injury** or **property damage**.

31. Neither the Route Amended Complaint nor the Maignan Complaint is within the grant of coverage of Section I for **bodily injury** or **property damage**.

32. Any potential coverage for the Route Amended Complaint or the Maignan Complaint under Section I for **bodily injury** or **property damage** is excluded by operation of Exclusion 11 for the rendering of or failing to render professional services.

33. Because the Route Amended Complaint and the Maignan Complaint do not seek **damages** because of **bodily injury** or **property damage**, and any potential for coverage for bodily **injury** or **property damage** under Section I is excluded by operation of Exclusion 11, PPCS and First Nonprofit seek a finding that there is no coverage available under the First Nonprofit Policy which applies to claims for bodily injury and/or property damage.

## COUNT II – DECLARATORY JUDGMENT
## ALLIED WORLD SURPLUS LINES HAS A DUTY TO DEFEND PAUL PUBLIC CHARTER SCHOOL FOR BOTH THE ROUTE AMENDED COMPLAINT AND THE MAIGNAN COMPLAINT

34. PPCS and First Nonprofit repeat and re-allege paragraphs 1 through 33 as though fully set forth herein.

35. Allied World has acknowledged that both the Route Amended Complaint and the Maignan Complaint are within the grant of coverage of the Insuring Agreements of the Allied World Policy.

36. Allied World has acknowledged that that Insuring Agreements (A) and (B) of the Allied World Policy require Allied World to defend any **Claim** first made against the **Insured** for a **Wrongful Act.**

37. By letters dated December 27, 2016, Allied World advised PPCS that it had concluded it had no duty to defend its **Insured** for the Route Amended Complaint and the Maignan Complaint as "pursuant to Section IV(C)(2), Allied World has no defense obligations…."

38. Under Section IV(C)(2) of the Allied World Policy, "with respect to any **Claim** under this Policy for which coverage is available under any insurance policy which applies to claims for bodily injury and/or property damage" Allied World has no duty to defend such a **Claim.**

39. There is no coverage available under the First Nonprofit Polices which applies to claims for bodily injury and/or property damage.

40. Because there is no coverage available under the First Nonprofit Policy which applies to claims for bodily injury and/or property damage, Section IV(C)(2) of the Allied World Policy does not relieve Allied World of its duty to defend.

41. Based on the foregoing allegations, PPCS and First Nonprofit seek a finding and a declaration that Allied World owes a duty to defend to PPCS regarding the Route Amended Complaint and the Maignan Complaint.

## COUNT III – DECLARATORY JUDGMENT
## COVERAGE UNDER THE FIRST NONPROFIT POLICY IS EXCESS TO THAT OF THE ALLIED WORLD POLICY

42. PPCS and First Nonprofit repeat and re-allege paragraphs 1 through 41 as though fully set forth herein.

43. The First Nonprofit Policy contains an "Excess" other insurance clause.

44. To the extent that the First Nonprofit Policy applies to the Route Amended Complaint and the Maignan Complaint, the First Nonprofit Policy is excess to the Allied World Policy.

45. Alternatively, to the extent that Section IV(C) of the Allied World Policy is construed to be a valid excess insurance clause, the excess insurance clause in the First Nonprofit Policy and the excess insurance clause in the Allied World Policy are mutually repugnant.

Therefore, the clauses cancel each other and each insurer is to contribute to the Loss, including the costs of defense, according to its limit of insurance.

46. Based on the foregoing allegations, PPCS and First Nonprofit seek a finding and a declaration that Allied World is either the primary carrier and owes a duty to defend to PPCS regarding the Route Amended Complaint and the Maignan Complaint, or must contribute the defense and indemnification of its **Insured** in proportion to its limit of insurance.

## COUNT IV – MISREPRESENTATION

47. PPCS and First Nonprofit repeat and re-allege paragraphs 1 through 46 as though fully set forth herein.

48. When Allied World declared on December 27, 2016 that it had no duty to defend its **Insured**, that representation was untrue inasmuch as Allied World knew that there was no coverage available under the First Nonprofit Policy which applies to claims for bodily injury and/or property damage.

49. At the time Allied World misrepresented that it had no duty to defend its **Insured**, Allied World was under a duty to convey accurate information regarding coverage under its policies to PPCS.

50. Allied World made the representation either carelessly or negligently with the knowledge that PPCS and First Nonprofit would rely on the representation.

51. First Nonprofit has been harmed by Allied World's misrepresentation as it has paid amounts for the defense of PPCS for both the Route Amended Complaint and the Maignan Complaint.

52.     PPCS and First Nonprofit seek an award of compensatory damages in the amount it has paid for the defense of PPCS for both the Route Amended Complaint and the Maignan Complaint.

## COUNT V– UNJUST ENRICHMENT

53.     PPCS and First Nonprofit repeat and re-allege paragraphs 1 through 52 as though fully set forth herein.

54.     Allied World has defense obligations to its **Insured** for the Route Amended Complaint and the Maignan Complaint.

55.     Nevertheless, Allied World improperly claimed that it was an excess carrier with no duty to defend its **Insured** for the Route Amended Complaint and the Maignan Complaint.

56.     Because Allied World improperly claimed that it was an excess carrier with no duty to defend it's **Insured** for the Route Amended Complaint and the Maignan Complaint, Allied World unjustly retained a benefit in the form of funds that it should have paid towards the defense of PPCS for the Route Amended Complaint and the Maignan Complaint.

57.     As a result of Allied World's conduct, First Nonprofit has been, and continues to be, harmed in the form of money it has paid to defend PPCS.

58.     PPCS and First Nonprofit seek a declaration that Allied World has been unjustly enriched by its failure to pay for the defense of its **Insured** in the amount that First Nonprofit has paid for the defense of PPCS or, alternatively, has been unjustly enriched in an amount representing its proportional share of defense costs and award such amount to First Nonprofit.

## COUNT VI– EQUITABLE CONTRIBUTION

59.     PPCS and First Nonprofit repeat and re-allege paragraphs 1 through 58 as though fully set forth herein.

60. Allied World has defense obligations to its **Insured** for the Route Amended Complaint and the Maignan Complaint.

61. Under the principles of equitable contribution and subrogation, Allied World must reimburse First Nonprofit for all or part of any costs or expenses paid by First Nonprofit in defending or indemnifying PPCS.

WHEREFORE, Plaintiffs, Paul Public Charter School and First Nonprofit Insurance Company respectfully pray that this Honorable Court enter judgment as follows:

   a. Declare that the First Nonprofit Insurance Company Policy does not provide bodily injury or property damage coverage under Section I of the Policy for the Claims made against Paul Public Charter School;

   b. Declare that Allied World Surplus Lines has a duty to defend Paul Public Charter School in the litigation brought by Justin Route, Jennifer Route and Vaughn Jones bearing case No. 2016-CA-007379 B in the Superior Court for the District of Columbia and to defend Paul Public Charter School in the litigation brought by Genevieve Maignan bearing case No. 2016-CA-007656 B in the Superior Court for the District of Columbia;

   c. Declare that coverage under the First Nonprofit Insurance Company Policy is excess that of coverage provided by Allied World Surplus Lines, or alternatively, declare that the excess insurance provisions are mutually repugnant and that the costs of defense and indemnification must be shared on a pro-rata basis;

   d. Award the Plaintiffs compensatory damages;

   e. Declare that Allied World has been unjustly enriched and must disgorge all sums it should have paid for the defense and indemnification of Paul Public Charter School to First Nonprofit; and,

   f. That such other and further relief be granted as this Court deems just and proper.

DATED:  September 28, 2017

Respectfully Submitted:

LEE & MCSHANE, PC

/s/ Terrence M. McShane
Terrence M. McShane, Esq., #429683
Arthur T. K. Norris, Esq., #438907
1211 Connecticut Ave, NW, Suite 425
Washington, DC 20036
tmm@lee-mcshane.com
atn@lee-mcshane.com
(202) 530-8100
(202) 530-0402 (fax)
*Counsel for Plaintiffs*


Of Counsel:

Rostyslaw J. Smyk, Esq. (Pro hac vice pending)
Dennis B. Condon, Esq. (Pro hac vice pending)
Ruberry, Stalmack & Garvey, LLC
10 South LaSalle, Suite 1800
Chicago, Illinois 60603
(312) 466-8050